WILLIE JACKSON, Appellant, v REGIONAL TRANSIT SERVICE et al., Respondents.

Fourth Department, November 12, 1976

306

*Ian DeWaal* for appellant.

*Harris, Beach & Wilcox (Peter Spinelli* of counsel), for respondents.

CARDAMONE, J. P. Willie Jackson (plaintiff) was employed as a bus driver by the respondent Regional Transit Service (RTS). While on duty on April 4, 1975 he was involved in a traffic accident and thereafter discharged because of excessive preventable accidents. Subsequently he was found not guilty of a traffic citation issued as a result of the accident.

In accordance with the grievance procedure contained in the labor agreement between RTS and plaintiff's union (Amalgamated Transit Union, Division 282, AFL-CIO), his discharge was protested. The discharge was upheld by plaintiff's supervisor and by respondent's resident manager. The union then demanded arbitration and the merits of the alleged wrongful discharge were presented to the arbitrator. On December 3, 1975 the arbitrator issued a decision in which he held that the failure of the union to name its arbitrator within the contractual time limits (5 days) renders the grievance nonarbitrable. No proceeding was instituted within the 90-day time limit to modify or vacate the award (CPLR 7511).

Plaintiff then commenced the instant action against RTS and Rochester-Genesee Regional Transportation Authority (RTS's parent corporation). The union was not made a party defendant. The complaint alleges that RTS breached its collective bargaining agreement with the union by wrongfully discharging plaintiff. Plaintiff further alleges that the failure of the union to timely notify RTS of its designated arbitrator

constitutes a failure by the union properly to represent him, thereby creating a cause of action in his favor directly against RTS.

RTS successfully moved to dismiss the complaint on the ground that plaintiff had failed to state a cause of action and had failed to join the union as a party. From this determination at Special Term plaintiff appeals.

Plaintiff was employed in the public sector by respondent RTS. In the private sector where the rights of an individual employee are entrusted to a union and where the action of that union protecting the rights of an employee constitutes bad faith or arbitrariness, or the union processes the employee's rights in a perfunctory manner, the employee may maintain a direct action against his employer (*Hines v Anchor Motor Freight,* 424 US 554; *Vaca v Sipes,* 386 US 171; *Wingenbach v Mushroom Transp. Co.,* 51 AD2d 855). The question on this appeal is whether this right of direct action should be granted equally to public employees in New York whose employment is governed by the State Civil Service Law, rather than the Federal Labor Relations Management Act.

Under New York law prior to *Vaca v Sipes (supra),* a private union employee had no direct action against his employer; but was limited to the remedies provided by the collective bargaining agreement negotiated between his employer and his union (*Chupka v Lorenz-Schneider Co.,* 12 NY2d 1, app dsmd 372 US 227; *Matter of Soto [Goldman],* 7 NY2d 397; *Parker v Borock,* 5 NY2d 156). However, the United States Supreme Court has extended the rights of an individual employee and ruled that a wrongfully discharged employee may bring an action against his employer despite a defense of the employee's failure to exhaust contractual remedies, provided that the employee can prove that the union as bargaining agent breached its duty of fair representation in the handling of the employee's grievance (*Vaca v Sipes, supra,* p 186). The employee's right to bring an action includes situations where the union refuses to press or only perfunctorily presses the individual's claim (*Republic Steel v Maddox,* 379 US 650). Even where the grievance proceeds to arbitration on the merits, if the union breached its duty of fair representation, the arbitration award will not bar a direct suit by an employee against his employer (*Hines v Anchor Motor Freight, supra*). The failure of the union to designate its arbitrator within the contractual time limit constitutes that

kind of action which violates the standard of duty which, as set forth in *Vaca,* holds that "when a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step towards resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation" *(Ruzicka v General Motors Corp.,* 523 F2d 306, 310).

The cited private sector cases involve the Labor Management Relations Act. Section 301 of such act (US Code, tit 29, § 185) "contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge. *Smith v Evening News Assn.,* [371 US], at 198-200". *(Hines v Anchor Motor Freight, supra,* p 562.)

Respondent argues that the labor policies between public employees, their unions and their employers in New York are found in the Civil Service Law and that there is no section of that statute corelative to section 301 of the LMRA. While State courts are required to apply Federal labor law to cases involving private-sector employees *(Teamster's Local v Lucas Flour Co.,* 369 US 95), subdivision 3 of section 209-a of the Civil Service Law provides that "no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent".

Nonetheless, the policy underlying the principle that a wrongfully discharged employee may bring an action against his employer, despite a defense that the employee failed to exhaust his contractual remedies, provided that the employee can prove that the union as bargaining agent breached its duty of fair representation should apply with equal force to the public sector. Since the Federal District Courts are statutory courts of limited jurisdiction (US Code, tit 28, § 1331 *et seq),* section 301 was adopted in order to vest authority in the Federal District Courts to entertain suits involving violation of collective bargaining as between labor organizations and employers without regard to amount in controversy (US Code, tit 29, § 185, subd [a]). In view of the broad general jurisdiction of the New York Supreme Court no legislative enactment is required for it to entertain similar suits. Section 301 of the LMRA actually adds no substantive law and should not serve

as a reason to distinguish private and public employees' rights. The United States Supreme Court in *Hines* discussed the Congressional policy inherent in section 301 and concluded that it "reflects the interest of Congress in promoting 'a higher degree of responsibility upon the parties to such agreements'" (p 561). Clearly, the public employee union has the same duty of fair representation as the private employee union (accord, *Matter of Union Free School Dist. No. 6 v New York State Div. of Human Rights,* 43 AD2d 31, 35).

The rationale which permits direct suits by employees against employers, even when the employer has done nothing to prevent the hearing on the merits of a grievance, is simply that when an employer has wrongfully discharged an employee in breach of a collective bargaining agreement, that breach could be remedied through the grievance procedure to the employee's benefit were it not for the union's breach of its duty of fair representation to the employee. Such lack of fair representation leaves the employee remediless to hold his job and, therefore, constitutes a serious injustice to the employee. It is not section 301 *(Hines v Anchor Motor Freight, supra,* p 566), which is violated but rather, the fact that the Legislature has conferred upon the employers and unions exclusive power to establish grievance procedures. We cannot believe that the Legislature intended to vest in the unions such unfettered discretion as to deprive injured employees of all remedies for breach of contract. To permit the employer wrongfully to discharge an employee and then be shielded from the natural consequences of such breach by the collective bargaining agreement or by wrongful or perfunctory union conduct in the enforcement of such agreements is contrary to the public policy relating to public as well as private sectors of employment where it is plain that public employers and their employees' interests are best served when grievances are heard and decided on the merits (Civil Service Law, § 200).

The order should accordingly be reversed and the motion to dismiss plaintiff's complaint should be denied.

MAHONEY, DILLON, GOLDMAN and WITMER, JJ., concur.

Order unanimously reversed, with costs and motion denied.