OPINION OF THE COURT
Benjamin F. Nolan, J.
To help the City of New York to survive a fiscal emergency, plaintiff’s union and the city entered into a written agreement in 1975 to defer for one year wage increases admittedly due plaintiff and other members of his union. When five years elapsed and the city continued to refuse to pay plaintiff any of the deferred wages, plaintiff, pro se, sued the city herein for payment in Small Claims Court. The city now moves to dismiss the complaint because plaintiff did not first seek relief under arbitration before resorting to the court, and, because the action is premature since ambiguities in the agreement have indefinitely suspended the city’s obligation to pay the deferred wages to at least 1982. Recently, in Albert v City of New York (101 Misc 2d 356), this court upheld a claim identical to the one at bar *786 and rendered judgment in favor of Albert. However, Appellate Term reversed (Albert v City of New York, 103 Misc 2d 962). Now, the city contends that on the authority of that reversal this court must dismiss the complaint herein.
In Albert (101 Misc 2d 356, supra), this court held that Albert had brought himself within the guidelines of Vaca v Sipes (386 US 171), in which the Supreme Court of the United States held that an employee whose rights were abused by his union could resort to direct judicial suit instead of being limited to contractual arbitration remedies likely to be of dubious value because they would be within the sole discretion of the very union which had already abused his rights. But, Appellate Term held that Albert had not brought himself within those guidelines because there had not been even an intimation in Albert of bad faith or unfair representation by the union. This conclusion, however, is so clearly contradicted by the record in Albert that this court could not possibly conform to it. For instance, the city admitted in Albert (as it does herein) that the union, in collaboration with the city, put together what was proclaimed to be a one-year wage deferral agreement but then rendered the agreement ambiguous as to date of termination by the insertion of conditions which left payment of the deferred wages suspended indefinitely to the prejudice of the employees. While acknowledging its own role in the drafting of the ambiguous agreement, the city cavalierly suggested in Albert that,' instead of suing the city, Albert should have sued his own union for breach of his union’s fiduciary duty to him. A union which enters into a bad collective bargaining agreement as statutory representative of employees who were powerless to do anything about it, is guilty of improper union representation. (Matter of Union Free School Dist. No. 6, Town of Babylon v New York State Div. of Human Rights, 43 AD2d 31, 35.) Indeed, it is thus clear that there was much more than an intimation of bad faith or unfair union representation in Albert.
Contrary to the impression one might obtain from a cursory reading of the Appellate Term opinion in Albert (103 Misc 2d 962, supra), no arbitration panel ever passed upon Albert’s claim. The references in that opinion to the *787 findings of an arbitration panel relate to findings in an entirely different matter, that is, in Matter of Coalition Unions (Office of Collective Bargaining, Docket Nos. A-743-78, I-141-78) by an arbitration panel which in 1978 was called upon by a coalition of unions — not including Albert’s or this plaintiff’s union — to (1) interpret the wage deferral agreements of the coalition unions, and (2) to fashion a new economic agreement between the city and the coalition unions. That panel found that the wage deferral agreements of the coalition unions did not contain any clear and explicit language “indicating that the City’s contingent liability for payment of the deferred wage increase was to continue until such time as conditions for payment were met”, and, that “the date of June 30, 1978 (specified in the agreement) was related to the expiration of the contract” (emphasis supplied). Those same conclusions apply to the wage deferral agreements applicable to Albert’s and this plaintiff’s union because the wage deferral agreements of the coalition unions were identical to those applicable to Albert’s and this plaintiff’s union when originally drawn in 1975 — as shall be more specifically illustrated (infra).
In addition to interpreting the coalition deferral agreements, the arbitration panel in Matter of Coalition Unions (supra) was obligated to fashion a new economic agreement between the city and the coalition unions. In furtherance thereof, the city and the coalition unions desired to continue the wage deferral but the panel concluded that the 1975 wage deferral agreements of the coalition unions (identical to Albert’s and this plaintiff’s) had expired, and, because of their ambiguities with respect to date of termination, had to be reformed. The panel then proceeded to reform and rewrite the agreements, extending the deferrals to at least July 1, 1982, or whenever thereafter the specified conditions were met. The wage deferral agreements of Albert’s and this plaintiff’s union have never been reformed or rewritten. They still call upon the city to pay the deferral wages by June 30, 1978.
Like Albert, the plaintiff herein has been aggrieved by the ambiguities of the wage deferral agreement. However, unlike Albert, this plaintiff did ask his union to act on his *788 behalf, but his union refused, saying it was inclined to follow the conclusion of Matter of Coalition Unions (supra), that the deferred wages are not payable before July 1, 1982. As pointed out supra, that conclusion applied only to the reformed and rewritten agreements of the coalition unions and not to Albert’s or this plaintiff’s wage deferral agreements.
Appellate Term’s suggestion in Albert (103 Misc 2d 962, supra) (also alleged by the city herein) that a claim of this kind should be treated differently because other claimants might bring similar actions is clearly misplaced. It would be violative of this court’s oath if it denied a claim of this kind because its grant would have an effect upon the claims of others. Besides, a small claims judgment is not res judicata except as to amount (CCA, § 1808); and, the amount of the claim was not an issue in Albert, nor is it an issue herein.
Appendix B to the plaintiff’s deferral agreement recites unequivocally and unambiguously that “the period of deferral shall commence July 1, 1975 and terminate June 30, 1976.” But, even if there were any substance to the city’s contention that the ambiguities of the agreement suspend indefinitely the city’s obligation to pay the wage increases, can it be said that such obligation is suspended forever? A promise to defer is no different than a promise to forbear. Where conditions render such a promise indefinite as to duration, the promise continues to be legally binding only for a time reasonably long enough for the condition to be performed. (Strong v Sheffield, 144 NY2d 392; Traders’ Nat. Bank v Parker, 130 NY 415; Perkins v Proud, 62 Barb 420; Jamaica Tobacco & Sales Corp. v Siegel, 40 AD2d 686.) Here — five years have already elapsed without the city attempting in good faith to comply with any of the conditions of payment. In Ruzicka v General Motors Corp. (523 F2d 306, 315), a Federal Court of Appeals held that “[f]ive years is far too long for an employee to * * * wait * * * Further delay would seem unconscionable.”
The city waived any rights it may have had under collective bargaining to urge that plaintiff failed to first exhaust contractual remedies under arbitration before resorting to the court.
*789 In Wilder v Designeraft Jewel Inds. (NYLJ Oct. 22, 1979, p 6, col 6) the same Appellate Term which reversed in Albert (103 Misc 2d 962, supra) first found, as it did in Albert, that the plaintiff had not brought himself within the guidelines of Vaca (386 US 171, supra), so as to be able to bring direct judicial suit, but then went on to hold that nevertheless defendant’s contentions were defective, saying: “First, it raised the issue of arbitration as a matter of defense. Secondly, it moved for summary judgment for failure to 'exhaust * * * administrative remedies.’ The agreement to arbitrate is not a defense (DeSapio v. Kohlmeyer [35 NY2d 402], 404, n. no. 1). The proper remedy is an action or motion to compel arbitration, which, if granted, will operate to stay the existing action (CPLR 7503 [a]; see also Bd. of Educ., Utica v. Delle Cese [65 Misc 2d 473], 477). Nor, may the agreement to arbitrate form the basis for a motion for summary judgment (Weinstein-Korn-Miller, par. 7503:19), and, as noted, the bringing on of such a motion may in itself spell out a waiver (Bd. of Educ. v. Mancuso Bros. [25 Misc 2d 122]).”
In the case at bar, the city has improperly raised the issue of arbitration as a matter of defense and improperly moved for summary judgment for failure to exhaust contractual remedies. Its voluminous papers in support of its motion address the merits as well as procedural issues. The city’s proper remedy, as Appellate Term held in Wilder v Designeraft Inds. (supra), should instead have been an action or motion to compel arbitration.
As authority for its conclusion that Albert failed to exhaust contractual remedies, Appellate Term in Albert (103 Misc 2d 962, 964) cited Vaca v Sipes (supra, at p 184), but did not see fit to include the remainder of the Vaca paragraph at pages 184 and 185 which addressed as follows the circumstances under which the so-called “exhaustion” rule does not apply: “However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the *790 individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures.” These modifications of the “exhaustion” rule were further amplified in Matter of Union Free School Dist. No. 6, Town of Babylon v New York State Div. of Human Rights (43 AD2d 31, 34-35, supra).
Union conduct held to have tainted its representation sufficiently to justify direct suit by an employee against an employer includes bad faith, hostility, discrimination, arbitrariness (Ruzicka v General Motors Corp., 523 F2d 306, 316, supra; Matter of Union Free School Dist. No. 6, Town of Babylon v New York State Div. of Human Rights, 43 AD2d 31, 35, supra), or, dishonesty, or, ignoring or perfunctorily handling grievances (Vaca v Sipes, 386 US 171, 194, supra); or, failure to act, intentional or negligent failure to act, or allowing a grievance to expire, or, failure to press or investigate a complaint (Republic Steel Corp. v Maddox, 379 US 650, 652; Hines v Anchor Motor Frgt., 424 US 554, 564; Jackson v Regional Tr. Serv., 54 AD2d 305, 307); or, such inaction as to imply bad faith (Balowski v International Union, United Auto., Aerospace & Agric. Implement Workers of Amer., 372 F2d 829, 834); or, where resort to union representation was futile or an exercise in frustration (Glover v St. Louis-San Francisco Ry. Co., 393 US 324, 330, 331; Wingenbach v Mushroom Transp. Co., 51 AD2d 855, 856); or, where the union entered into a bad collective bargaining agreement as statutory representative of employees who were powerless to do anything about it (Matter of Union Free School Dist. No. 6, Town of Babylon v New York State Div. of Human Rights, supra). In Glover v St. Louis-San Francisco Ry. Co. (supra, at p 329), the United States Supreme Court said that “no meaningful distinction can be drawn between discriminatory action in negotiating the terms of an agreement and discriminatory enforcement of terms that are fair on their face.” Furthermore, the suggestion of Appellate Term in Albert (103 Misc 2d 962, supra) that the foregoing protections of Vaca (supra) and its progeny may only be applicable to a wrongful discharge case is completely misplaced. These protections have been held to cover “ ‘uniquely *791 personal’ rights of employees such as wages, hours, overtime pay, and wrongful discharge” (Jackson v Regional Tr. Serv., 54 AD2d 305, 308); and, “other improper treatment at the hands of the employer.” (Hines v Anchor Motor Frgt., 424 US 554, 564.)
Plaintiff has been denied due process of law by the misconduct of his union in entering into an ambiguous wage deferral agreement, by his union refusing to process plaintiff’s claim when he asked the union to do so, and by his union collaborating with the city to keep the wage deferral suspended indefinitely. The confidence of the city in this cozy arrangement is exceeded only by its brazenness, as manifested by the statement made by Felix Rohatyn, the city’s “Big MAC” overseer, that the employees “might get their money in the year 1980 or 1995 or the year 2000, but also possibly never.” (Matter of Coalition Unions, supra, P 28.)
The exhaustion concept is procedural, not substantive. This was made perfectly clear in Jackson v Regional Tr. Serv. (supra, at p 308), where the Appellate Division extended to public employees the Federal due process protections of Vaca v Sipes (supra), saying that such extension required no legislative enactment because the collective bargaining statute “adds no substantive law.” In its role as a Small Claims Court, this court is obligated to dispense substantial justice “according to the rules of substantive law and shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence”. (CCA, § 1804.) Accordingly,.this court treats the city’s motion as one for summary judgment and denies summary judgment to the city but grants summary judgment to plaintiff.