ROCCO SPANO, Appellant, v KINGS PARK CENTRAL SCHOOL DISTRICT et al., Respondents. [877 NYS2d 163]—

In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals, as limited by his brief, from so much of an order of the Supreme Court, Suffolk County (Spinner, J.), dated September 25, 2007, as, upon, in effect, converting the defendants' separate motions pursuant to CPLR 3211 to dismiss the complaint insofar as asserted against each of them into motions for summary judgment dismissing the complaint insofar as asserted against each of them, granted the motions, and denied, as academic, that branch of the plaintiff's cross motion which was to compel arbitration.

Ordered that the order is modified, on the law, (1) by deleting the provisions thereof granting those branches of the defendants' converted motions which were for summary judgment dismissing the first, second, third, fifth, sixth, and seventh causes of action insofar as asserted against each of them and substituting therefor provisions denying those branches of the motions, and (2) by deleting the provision thereof denying, as academic, that branch of the plaintiff's cross motion which was to compel arbitration and substituting therefor a provision denying that branch of the plaintiff's cross motion on the merits; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiff.

In January 1995 the plaintiff began working for the defendant Kings Park Central School District (hereinafter Kings Park) as a temporary or substitute custodian. In August 1996 the plaintiff was hired as a permanent custodian with union benefits, and began paying dues to the defendant CSEA, Local 1000, AFSCME, AFL-CIO (hereinafter CSEA). The plaintiff took a one-year unpaid leave of absence from May 26, 2001 through May 20, 2002.

In November 2005 the plaintiff attended a CSEA meeting, at which Rebecca Sobotkin, the CSEA unit president, announced that, pursuant to the collective bargaining agreement (hereinaf-

ter CBA) between Kings Park and CSEA, Kings Park would pay a $13,000 retirement bonus to any employee with 10 years of service who notified Kings Park by March 1, 2006, of his or her intent to retire by January 1, 2007. The CBA provided, in pertinent part, that: "A retirement bonus shall be granted eligible employees covered by this contract. An eligible employee is one covered by this contract who is eligible to retire . . . and has completed 10 years of service in Kings Park School District. . . . Ten years of completed service means continuous service except that persons on an approved leave . . . shall neither lose accrued time nor gain time because of said leave."

On February 28, 2006, based on his belief that he qualified for the retirement bonus, the plaintiff submitted a letter notifying Kings Park of his intent to retire, effective December 29, 2006. The plaintiff subsequently learned from Kings Park that he did not qualify for the bonus, since his first 18 months on the job, which he spent in a temporary or substitute capacity, did not count toward the service requirement, and therefore he would be credited with only 9 years and 4 months of service. The plaintiff made an inquiry about rescinding his retirement, but was told that he could not do so.

Sobotkin advised the plaintiff that CSEA would not oppose Kings Park's determination regarding the bonus. According to Sobotkin, the plaintiff did not request that CSEA file a grievance on his behalf. Instead, in January 2007, the plaintiff commenced this action against Kings Park and CSEA, seeking, inter alia, damages for breach of contract and fraud against Kings Park, rescission of his retirement, reinstatement of his employment with Kings Park, and, in effect, damages for breach of the duty of fair representation against CSEA.

At a hearing pursuant to General Municipal Law § 50-h, the plaintiff gave the following testimony. The plaintiff first learned that he was not eligible for the retirement bonus in April 2006 when he asked a Kings Park employee in charge of payroll for a letter confirming that he would receive the bonus, and was informed that he had not yet accrued 10 years of service. The plaintiff subsequently asked Sobotkin to assist him in obtaining a written confirmation of his entitlement to the bonus, but she advised him that he would have to obtain the letter on his own. The plaintiff did not speak to anyone at Kings Park about the bonus again until October 2006 when he was informed by the secretary to the school superintendent that the superintendent "wanted to get [him] the [bonus] by using the 18 months that [he] put in as a temp, but that the union was against it." When the plaintiff asked Sobotkin why CSEA was "fighting" the

superintendent's effort to get him the bonus, she replied: "I have to fight it because if I give it to you, I have to give it to everybody else." Although Sobotkin acknowledged that there was currently no one else in the plaintiff's situation, she explained that she did not want to "set a precedent." The plaintiff was subsequently advised that the superintendent had determined that he was not entitled to the retirement bonus. In November 2006 Sobotkin informed the plaintiff that CSEA did not intend to challenge the superintendent's determination.

Kings Park moved to dismiss the complaint insofar as asserted against it on the grounds, among others, that the plaintiff failed to exhaust his administrative remedies and lacked standing to assert claims arising under the CBA. CSEA moved to dismiss the complaint insofar as asserted against it on the ground, among others, that it did not breach its duty of fair representation. The plaintiff cross-moved, inter alia, to compel arbitration with Kings Park. The Supreme Court, in effect, converted the defendants' motions into motions for summary judgment dismissing the complaint insofar as asserted against each of them (see CPLR 3211 [c]), granted the motions, and denied the plaintiff's cross motion as academic. The plaintiff appeals.

The Supreme Court concluded that the defendants were entitled to summary judgment dismissing the complaint since, as a matter of law, the plaintiff had not completed 10 years of service pursuant to the CBA, and therefore was not eligible for the retirement bonus. We disagree. When a contract, "read as a whole to determine its purpose and intent," plainly manifests the intent of the parties, relief may be granted by way of summary judgment (*W.W.W. Assoc. v Giancontieri,* 77 NY2d 157, 162 [1990]). Where, however, the contractual provision relied upon is ambiguous, "the resolution of the ambiguity is for the trier of fact" (*State of New York v Home Indem. Co.,* 66 NY2d 669, 671 [1985]; *see Nappy v Nappy,* 40 AD3d 825, 826 [2007]). Here, the CBA provided, in relevant part, that an employee is eligible to receive a retirement bonus when he or she "has completed 10 years of service in Kings Park School District." The CBA defined "10 years of completed service" as "continuous service." The CBA did not define "continuous service," and contained no language indicating that "continuous service" included only service as a permanent employee. Accordingly, the CBA was ambiguous, since it was silent on the issue of whether "continuous service" included service in a temporary or substitute capacity. Indeed, according to the school superintendent, Kings Park's determination that "continuous service" referred only to per-

manent service was not based on any language in the CBA, but was made "pursuant to past practice." Similarly, according to Sobotkin, CSEA's position that the plaintiff was not eligible for the retirement bonus was based solely on its decision to honor Kings Park's "longstanding interpretation" of the CBA. Thus, the issue of whether the plaintiff was an eligible employee under the CBA cannot be determined as a matter of law, and the defendants, therefore, were not entitled to summary judgment on that ground.

The Supreme Court further concluded, in effect, that CSEA was entitled to summary judgment on the ground that it did not breach its duty to the plaintiff to provide fair representation. In order to establish a breach of the duty of fair representation against a union, a member must show that "the union's conduct was arbitrary, discriminatory, or in bad faith" (*Lundgren v Kaufman Astoria Studios,* 261 AD2d 513, 514 [1999]; *see Hickey v Hempstead Union Free School Dist.,* 36 AD3d 760, 761 [2007]; *Ponticello v County of Suffolk,* 225 AD2d 751, 752 [1996]). We conclude that CSEA failed to make a prima facie showing that it did not breach its duty of fair representation. The papers submitted by CSEA in support of its motion included a transcript of the plaintiff's testimony at the hearing held pursuant to General Municipal Law § 50-h, which itself revealed the existence of a triable issue of fact as to whether CSEA acted arbitrarily in adopting the position that the plaintiff was not eligible for the retirement bonus, rather than asserting, on the plaintiff's behalf, that his 18 months as a temporary or substitute custodian counted toward his "continuous service," which would have been an eminently reasonable interpretation of the relevant provision of the CBA. Under the circumstances of this case, including Sobotkin's affirmative statements to the plaintiff that it was CSEA's position that the plaintiff was ineligible for the retirement bonus and that the union would not challenge Kings Park's refusal to pay him the bonus, the plaintiff's alleged failure to specifically request that CSEA file a grievance on his behalf—a request which apparently would have been futile—does not negate the existence of a triable issue of fact as to whether CSEA breached its duty of fair representation.

Contrary to Kings Park's contention, it was not entitled to summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies and lacked standing to enforce the terms of the CBA. Generally, an employee covered by a collective bargaining agreement which provides for a grievance procedure must exhaust administrative remedies prior to

seeking judicial remedies (*see Matter of Plummer v Klepak*, 48 NY2d 486, 489-490 [1979]). In this case, the CBA set forth a four-step grievance procedure, and the plaintiff did not complete any of the steps in that procedure. Moreover, an individual union member normally lacks standing to enforce the terms of a collective bargaining agreement between the union and the employer (*see Hickey v Hempstead Union Free School Dist.*, 36 AD3d at 761; *Berlyn v Board of Educ. of E. Meadow Union Free School Dist.*, 80 AD2d 572 [1981], *affd* 55 NY2d 912 [1982]). Nonetheless, a union employee may maintain a direct action against an employer, despite a failure to exhaust available administrative remedies, where the employee can prove that "the union as bargaining agent breached its duty of fair representation in the handling of the employee's grievance," including situations where "the union refuses to press . . . the individual's claim" (*Jackson v Regional Tr. Serv.*, 54 AD2d 305 [1976]; *see Vaca v Sipes*, 386 US 171, 186 [1967]; *Matter of Board of Educ., Commack Union Free School Dist. v Ambach*, 70 NY2d 501, 508 [1987]; *Hickey v Hempstead Union Free School Dist.*, 36 AD3d at 761). Here, since there exists a question of fact as to whether the CSEA's conduct constituted a breach of its duty of fair representation, there exists a concomitant question of fact as to whether that conduct prevented the plaintiff from exhausting the remedies provided in the CBA (*see Vaca v Sipes*, 386 US at 185), thus affording him standing to sue Kings Park for a breach of the CBA and overcoming Kings Park's defense of failure to exhaust administrative remedies. Although Kings Park contends that the plaintiff could have processed his grievance by himself without assistance from CSEA (*see Matter of Lewis v Klepak*, 65 AD2d 637 [1978]), we perceive a triable issue of fact as to whether such steps would have been futile, in light of Sobotkin's statements to the plaintiff indicating that CSEA would not be supporting him at any stage of the grievance process.

The Supreme Court properly awarded summary judgment to the defendants dismissing the fourth cause of action, which, inter alia, sought to recover punitive damages. To the extent that this cause of action was based upon a breach of contract, punitive damages would be available only upon "an extraordinary showing of a disingenuous or dishonest failure to carry out [the] contract" (*Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427, 437 [1972]), which the plaintiff cannot make here. To the extent that the fourth cause of action was based upon fraud, punitive damages are not available in the absence of a showing, which the plaintiff cannot make here, that the defendants acted in a malicious, vindictive, or reckless manner (*see Reinah Dev.*

*Corp. v Kaaterskill Hotel Corp.,* 59 NY2d 482, 488 [1983]). Furthermore, punitive damages are not available against Kings Park, as it is a political subdivision of the State (*see Sharapata v Town of Islip,* 56 NY2d 332 [1982]).

In light of our determination, that branch of the plaintiff's cross motion which was to compel arbitration should not have been denied as academic. Nonetheless, denial of that branch of the cross motion on the merits was appropriate, since the plaintiff's "use of the courts is 'clearly inconsistent with [his] later claim that the parties were obligated to settle their differences by arbitration' " (*Stark v Molod Spitz DeSantis & Stark, P.C.,* 9 NY3d 59, 66 [2007], quoting *Flores v Lower E. Side Serv. Ctr., Inc.,* 4 NY3d 363, 372 [2005]).

The parties' remaining contentions are without merit or need not be reached in light of our determination. Prudenti, P.J., Mastro, Fisher and Dillon, JJ., concur. [*See* 2007 NY Slip Op 33211(U).]