8200 REALTY CORPORATION et al., Appellants, *v.* JOHN V. LINDSAY, as Mayor of the City of New York, et al., Respondents.

First Department, April 9, 1970.

*Arthur Richenthal* of counsel (*David Abrams* and *Irving M. Moss* with him on the brief; *Arthur Richenthal,* attorney), for appellants.

*Norman Redlich* of counsel (*Stanley Buchsbaum, Harry Michelson* and *James Nespole* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondents.

*Per Curiam.* This action challenges the constitutionality and validity of the Rent Stabilization Law of 1969 (Administrative Code of City of New York, tit. YY, ch. 51; Local Laws, 1969, No. 16 of City of New York). Although, for the purpose of the determination here, we assume that the emergency conditions of the city require the enactment of a revised and reasonable rent and eviction control law, we conclude that the newly enacted title YY fails to represent a proper and valid exercise of the legislative authority reposed in the city.

Title YY, approved by the Mayor on May 6, 1969 and effective immediately, was enacted for the purpose of extending rent and eviction control in the City of New York to Class A multiple dwellings containing six or more dwelling units, which were completed after February 1, 1947 or otherwise not subject to control under existing laws, and which were completed and for which a certificate of occupancy had been obtained prior to

March 10, 1969. Those Class A multiple dwellings completed prior to February 1, 1947 (pre-1947 dwellings), excepting those specially decontrolled or exempted, were already subject to rent and eviction control by virtue of the provisions of the existing city law, to wit, title Y of the Administrative Code which was enacted in 1962 upon the transfer of the matter of rent control from the State to the city (see " State Enabling Act ", Local Emergency Housing Rent Control Act; L. 1962, ch. 21, as amd.). Upon such transfer, title Y continued the uninterrupted control of the pre-1947 Class A multiple dwellings and title Y, as extended from time to time, still remains in effect to control said dwellings. In addition, by virtue of the provisions of title YY, title Y will now operate to control all post-1947 and pre-March 10, 1969 Class A multiple dwellings which are not owned by members of the private landlord's association hereinafter mentioned.

The presently challenged title YY was enacted to provide for industry self-regulation in establishing control of Class A multiple dwellings not previously under control. To accomplish such regulation, there is provision for the formation by landlords of a " real estate industry stabilization association " (§ YY51–6.0). The association is vested with various functions in relation to the administration of the law and, in this connection, it is directed to draw up " a code for stabilization of rents covering related terms and conditions of occupancy " to be approved by the City Housing and Development Administration. (See § YY51–6.0, subd. b, par. [2].) Where a landlord fails to participate in the industry self-regulation by becoming and remaining a member in good standing of the association, his dwelling units are subjected to rent control under the existing provisions of title Y of the Administrative Code. (See § YY51–4.0.) An association, as proposed, has been incorporated and organized by the landlords as a private corporation under the name of " The Real Estate Industry Stabilization Association of New York, Inc." (Association).

Fairly stated, the key feature of title YY is self-regulation. The purpose of the code to be adopted by the Association is to establish the guidelines for self-regulation subject, however, to certain control by boards appointed by the Mayor or established by law. There is provision in the title for a rent guidelines board, the members of which are appointed by the Mayor, but its functions are limited to establishment of guidelines for rent increases and it is not given any power to administer rent control. There is also provision for the appointment by the Mayor of the members of a conciliation and appeals board to receive

and act upon complaints from tenants and upon appeals from owners claiming hardship, but such board is established (§ YY51–6.0, subd. b, par. [3]) and materially controlled in its operations by the private Association. (See § YY51–6.0.) In sum, notwithstanding the provisions in title YY for certain regulatory and supervisory powers vested in the alleged city boards, the fact is that the legislation represents an unlawful vesting of improperly delegated rule-making (legislative) powers in the private Association formed by the landlords.

The legislative powers of a municipality depend upon grant by a provision in the State Constitution or in a statute duly enacted by the State Legislature. It is provided by the State Constitution that the legislative power of the State " shall be vested in the senate and assembly " and that the Legislature may grant to cities powers " of local legislation and administration " (N. Y. Const., art. III, § 1 and art. IX, § 2, par. [b], subpar. [1]). A municipality may only exercise legislative powers, including an exercise of the police power, to the extent that it has expressly or impliedly received a delegation of authority from the State. Thus, local laws and ordinances are valid where and only where the power to enact them has been vested in the local legislative body of the municipality by the Constitution and statutes of the State of New York. (See *Matter of Original R. Tyson, Inc.* v. *Tyler,* 24 N Y 2d 671, 673; *Seaman* v. *Fedourich,* 16 N Y 2d 94, 101; *Good Humor Corp.* v. *City of New York,* 290 N. Y. 312, 317; *Rockland County Bldrs. Assn.* v. *McAlevey,* 55 Misc 2d 695, mod. 29 A D 2d 975.)

The authority of the city to enact rent and eviction control legislation generally depends upon the provisions of the " State Enabling Act " (L. 1962, ch. 21, Local Emergency Housing Rent Control Act). Therein, it is provided that the instrumentality of the city to administer rent control shall be " an official, bureau, board, commission or agency of such city ", established or designated for such end by the Mayor (§ 4). Said act, read as a whole, calls for the administration of rent and eviction control by the city itself through an agency thereof and does not authorize the delegation of functions involving control to a private association or corporation and its officers and employees. There is nothing in the act to indicate that the State Legislature intended that the city in turn should have the right to either wholly or partially relinquish its delegated powers in this area by transferring its responsibilities to an association of landlords. Certainly, no such authority should be implied and, in any event, the Legislature would lack the power to authorize the city to delegate legislative authority to a private association.

Neither the State Legislature nor a local legislative body has the right to relinquish legislative functions to a private individual, or to a private association or corporation and its officers. (See 9 N. Y. Jur., Constitutional Law, § 139.) Legislative power affecting the substantial rights of citizens may not be vested in a private association or corporation. (See *Fox* v. *Mohawk & Hudson Riv. Humane Soc.*, 165 N. Y. 517; *Matter of Fink* v. *Cole*, 302 N. Y. 216; *Johnstown Cemetery Assn.* v. *Parker*, 45 App. Div. 55; *Murtha* v. *Monaghan*, 7 Misc 2d 568, affd. 5 A D 2d 695, affd. 4 N Y 2d 897. But cf. *Johnson & Co.* v. *Securities & Exch. Comm.*, 198 F. 2d 690.)

Although, by the provisions of title YY, the city through its agencies associates itself with the functions of the Association, the latter is supported by private funds and thus is a private corporation and may not be considered as a city instrumentality. (See *Van Campen* v. *Olean Gen. Hosp.*, 210 App. Div. 204, affd. 239 N. Y. 615.) Consequently, title YY is an attempt by the City of New York to govern a phase of its municipal affairs by association with a private corporation, and this should not be and is not permitted.

Unquestionably, title YY does in fact tend in a substantial manner to vest the regulation and control of rents in this private landlord's Association and in the conciliation and appeals board controlled in a material way by the Association. As aforenoted, the title confers upon the Association the power to adopt " a code for stabilization of rents covering related terms and conditions of occupancy " of the particular dwelling units (§ YY51-6.0, subd. b, par. [2]). Thereby, the Association is in effect given the power to draft rules binding upon its landlord members and the binding effect thereof upon the particular class of landlords is not affected by its nonapplicability to nonmembers. Furthermore, the provisions of the code and the actions of the conciliation and appeals board are binding upon tenants of the dwelling units owned by the member landlords. The tenants of these member buildings are bound to accept rent control terms less favorable to them than the terms which may be enjoyed by tenants of units owned by nonmembers; and the tenants have no choice or representation in the matter.

Included within the regulatory powers assumed by the Association in its adoption of the code is the establishment of the conciliation and appeals board (see § YY51-6.0, subd. b, par. [3]); the fixing of the salaries of the chairman and members of the board (see the approved Code of Real Estate Industry Stabilization Association of New York City, § 31); the providing of said board with an office and a staff; the defrayment by the

Association of the expenses of the board's functions in rent control matters (§ 32); and the authority to confer on the board powers and duties in addition to those general powers conferred upon it by law (§ 34).

Furthermore, the Association is given and assumes the power to fix and collect dues from the landlord members of the Association and to use the moneys received at the direction of its officers in furtherance of the purposes of the title, a public law. This in effect amounts to the taxing of a particular class of landlords for the purpose of administering and enforcing the city rent control regulations, and thus constitutes an invalid delegation of the legislative taxing powers of the city. (See 16 C. J. S., Constitutional Law, § 133, subd. a; *People ex rel. Metropolitan St. Ry. Co.* v. *State Bd. of Tax Comrs.*, 174 N. Y. 417, 444, affd. 199 U. S. 1; *Gautier* v. *Ditmar*, 204 N. Y. 20, 27; *Fox* v. *Mohawk & Hudson Riv. Humane Soc.*, 165 N. Y. 517, 526; *Franc* v. *Davidson*, 155 Misc. 382, 383.)

Additionally, title YY results in a violation of the constitutional prohibition against the enactment of a law which denies to any person " the equal protection of the laws of this state or any subdivision thereof " (N. Y. Const., art. I, § 11; see, also, U. S. Const., 14th Amdt., § 1). The favoring of those landlords who become and remain members of the Association, affording them the opportunity of less onerous controls and the economic advantage of substantially increased rental income amounts to unjustified discrimination. Certainly, rent control for the purpose of relief from the present emergency conditions should apply equitably and equally to all landlords similarly situated. Here, without rational basis, as we conclude, there is created a favored class of landlords who may escape the rigid controls of title Y; and incidentally, there is also created a less favored class of tenants. The favored class of landlords entitled to what amounts to preferential treatment consists of those landlords who qualify for membership in and who become and remain members of the Association. Excluded from the right to receive the preferred treatment are all owners of pre-1947 dwelling units already subject to control under title Y (they may not qualify for membership in the Association). Also excluded from the right to preferred treatment are those owners of post-1947 or other presently uncontrolled units who do not desire to assume the obligations of membership in the Association.

Furthermore, although all qualified pre-March 10, 1969 dwelling units are now placed under control, the tenants of non-member units are given the benefit of controls and rental terms far more favorable than those accorded to the tenants of

member units. Thereby, title YY has the effect of denying equal rent control treatment to those tenants who, by reason of circumstances beyond their control, are occupants of units owned by member landlords.

The classifications created in New York City landlords and tenants, with a different treatment accorded each class, as provided for in title YY, are not formulated by provisions of law which bear a reasonable and just relation to the public interest and to the subject matter of the law. The provision for discriminatory treatment of particular classes of landlords and tenants is not made to depend upon appropriate and relevant factors, such as rental bases, varying classes of tenancies, types and conditions of buildings and dwelling units, and the demand for and availability of particular units. Consequently, being without reasonable bases, the preferred treatment of the member landlords and the preferred treatment of the tenants of nonmember landlords are examples of that invidious discrimination condemned by law. (See *Matter of Madole* v. *Barnes*, 20 N Y 2d 169; but cf. *Allied Stores of Ohio* v. *Bowers*, 358 U. S. 522, 527.)

In summary, we conclude that the city has violated constitutional limitations and exceeded its delegated legislative authority by the enactment of the Rent Stabilization Law of 1969. The dangers inherent in this type of law, including the opportunities for the discriminatory treatment of landlords and tenants and for abuse by the private Association and its officers of the powers vested in it, require that the court strike it down. Thereby, the city is merely relegated to the responsibility of enacting proper and nondiscriminatory legislation placing the administration of rent and eviction control in a city controlled agency where it belongs.

The order and judgment, entered October 2, 1969, should be reversed and vacated, on the law, with costs and disbursements; plaintiffs' motion for summary judgment should be granted; and judgment should be entered declaring and decreeing that the New York City Rent Stabilization Law of 1969 (Administrative Code, tit. YY, ch. 51) is unconstitutional and invalid and declaring the same void and annulled in its entirety. The judgment entered hereon shall, however, be in all respects stayed pending the further order of this court.

EAGER, J. P., CAPOZZOLI, McGIVERN, NUNEZ and McNALLY, JJ., concur.

Order and judgment (one paper) entered on October 2, 1969, unanimously reversed and vacated, on the law, with $50 costs

and disbursements to the appellants; plaintiffs' motion for summary judgment granted; and judgment directed to be entered declaring and decreeing that the New York City Rent Stabilization Law of 1969 (Administrative Code, tit. YY, ch. 51) is unconstitutional and invalid and declaring the same void and annulled in its entirety. The judgment to be so entered shall, however, be in all respects stayed pending the further order of this court.