OPINION OF THE COURT
George M. Fleary, J.
Plaintiffs are employed as court clerks in the Supreme Court of New York County and Kings County. They were employees of the City of New York until April 1, 1977, the *450 effective date of the State "takeover” of the court system. Since April 1, 1977, plaintiffs have been State employees performing the same duties they performed prior to that date. Plaintiffs commenced the instant action to recover wages due them on the terms of a wage deferral agreement entered into by their union and the City of New York during the height of the city’s fiscal crisis in 1975. Plaintiff Whalen sued in New York County Small Claims Court for the sum of $985 and plaintiff Mennella in Kings County for the sum of $1,000.
This proceeding is a motion for summary judgment and a cross motion for summary judgment.
The facts are not in material dispute. The plaintiffs’ union negotiated a wage deferral during the period of the city’s serious economic and financial crisis. This covered the period July 1, 1975 to June 30, 1976. Then an arbitrator extended the wage deferral directing payment to be made June 30, 1982. This decision was made July, 1978.
Plaintiffs claim that since they are now State employees, effective April 1, 1977, and more specifically, were State employees during the time the arbitrator extended the deferral after its original termination period, which extension took place while they were State employees (July, 1978), they claim they should be paid the arrears immediately. They also cite as a precedent a decision by my colleague Judge Nolan in a similar case (Albert v City of New York, 101 Misc 2d 356).
While it would be facile for the court to rely on stare decisis only, and pre-emptorily grant the relief sought herein, it would be a blatant denial of the function of the judicial process to view each case with a clear eye and open mind. (People v Rodriguez, 101 Misc 2d 536.) Whether it is appropriate for the courts to overturn judicial precedent (i.e., Albert v City of New York, supra), must depend on several factors, among them will be the nature of the rights and interests at stake and the extent and degree to which action may justifiably have been taken in reliance on the precedent. Moreover, the Court of Appeals itself, in the recent case of Matter of Higby v Mahoney (48 NY2d 15, p 18, n 1) urges just such a view, stating, in a Per Curiam opinion; "The doctrine of stare decisis does not, of course, demand unyielding resignation to even recent precedent * * * in any discussion of stare decisis it must be taken, arguendo, that strong arguments can be mounted to support a different result.”
The main thrust of defendant’s cross motion is that these *451 individual two plaintiffs have no standing to sue since they were members of a union, and the union should be the party litigating the issue. The city argues that legislation authorized the salary deferrals (New York State Financial Emergency Act for City of NY, § 10, subd 2 [L 1975, ch 868, § 2]; Administrative Code of City of New York, ch 54, § 1173-12.0).
In the instant case this court holds that a plaintiff employee may maintain a direct action against his employer because the arbitrator’s determination extending the deferral of wages for city employees took place during the period of time when these plaintiffs were State employees; hence the action of the arbitrator was null and void insofar as State employees only.
The Constitutions of the State of New York and of the United States of America each permit citizens to petition the courts for redress of grievances (NY Const, art I, § 9; US Const, 1st Arndt). Am I to cut off their constitutional rights because of the statement of defense counsel that they have no standing to sue?
The court recognized the capacity of interested litigants to challenge civil service procedures on constitutional grounds in Matter of Burke v Sugarman (35 NY2d 39). Other settings in which questions of standing have been posed are too numerous to cite but several important cases are: Boryszewski v Brydges (37 NY2d 361), Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1), National Organization for Women v State Div. of Human Rights (34 NY2d 416) where the courts have held that it is our disposition to expand rather than to contract the doctrine. In Boryszewski v Brydges (supra, at p 364) the Court of Appeals of this State said:
"Where the prospect of challenge to the constitutionality of State legislation is otherwise effectually remote, it would be particularly repellant today, when every encouragement to the individual citizen-taxpayer is to take an active, aggressive interest in his State as well as his local and national government, to continue to exclude him from access to the judicial process — since Marbury v Madison (1 Cranch [5 US] 137), the classical means for effective scrutiny of legislative and executive action. The role of the judiciary is integral to the doctrine of separation of powers. It is unacceptable now by any process of continued quarantine to exclude the very persons most likely to invoke its powers.
"We, therefore, recognize the standing of these petitioners *452 to raise for judicial adjudication the claims of unconstitutionality that they now urge upon us.”
In Zimmerman v Murray (50 AD2d 668), the court stated: "In the instant case plaintiff is substantially affected by the administrative action and the one most likely to seek invocation of the judicial process to test the propriety of the allegedly improper acts. Plaintiff, therefore, in our view, has standing to maintain this action.”
The determination of how the cost of operating and maintaining the court system should be allocated is the duty of the Legislature (NY Const, art VI, § 29, subd a), but to the extent that the expense of the courts is borne by the counties, the City of New York, or other political subdivisions, rather than the State, "the final determination of the itemized estimates of the annual financial needs of the courts shall be made by the appropriate governing bodies of such [local political entities]” (NY Const, art VI, § 29, subd d). This proposition was clearly emphasized in the case of Matter of Blyn v Bartlett (50 AD2d 442, affd 39 NY2d 349) decided by the Appellate Division, Third Department, January 15, 1976 involving the termination of law secretaries to Civil Court Judges.
The State, with local concurrence, has assumed since 1976 responsibility for the administration of the judiciary at all levels. (Judiciary Law, § 39.)
The State began to assume the costs of operating all courts in April, 1977. Subdivision 3 of section 39 of the Judiciary Law mandated localities to retain responsibility for court costs associated with light, heat, power, leases, storage, expansion and maintenance of facilities.
State employees should not be affected by city legislation. It is time for the administration of the City of New York to measure up to its responsibility. This court is not unmindful of budgetary considerations. The rights of citizens as litigants must be protected notwithstanding the fact that the litigants happen to be governmental employees. This court holds the City of New York had no legal right to delegate sovereign and legislative power to an arbitrator. Local laws and ordinances are valid only where the power to enact them has been vested in the local legislative body of a municipality by the Constitution and the statutes of the State of New York and neither the State Legislature nor a local legislative body has the right *453 to relinquish legislative functions to private individuals (8200 Realty Corp. v Lindsay, 34 AD2d 79). In Matter of Levine v Whalen (39 NY2d 510, 515), the court defined the area where certain delegation of authority may be exercised and stated: "The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise.” The Legislature is the body which must establish standards and there was no authority — absent legislative enactment — for the city’s arbitrator in resolving problems concerning city employees to incorporate and include in his decision a judgment affecting State employees.
The constant erosion of the rights of the private citizen exists in this instance beyond an attempt at defense requiring excessive time from the primary function of the Corporation Counsel’s office. The within plaintiffs find that they have a bureaucracy to deal with that has staff and financial resources beyond their means. Legal questions continually arise in spite of the fact that most of the problems herein had clear precedents that should be adhered to. To wit, the decision by Judge Nolan hereinabove cited. With respect to the doctrine of stare decisis, those who engage in transactions based on the prevailing law must be able to rely on its stability (People v Hobson, 39 NY2d 479). Precedents involving statutory interpretation are entitled to great stability. (Matter of Schinasi, 211 NY 252.) Moreover, if the precedent has been misinterpreted, the Legislature’s competency to correct the misinterpretation is readily at hand (see, e.g., People v Butts, 32 NY2d 946; People v Cicale, 35 NY2d 661). There are statutes drawn in such general terms that it is evident that the legislative intention is that the courts, by their interpretation, indeed construction, fill in, by a case-by-case approach, the skeletal outlines. Those are statutes which apply general and therefore flexible standards. The classic example is that of the antitrust statutes, Federal and State, which apply "rules of reason”. In such cases the degree of flexibility in handling statutory precedents is that much the greater, but still not unlimited. (See Breitel, The Lawmakers, 65 Col L Rev 749, 761.)
Judgment for plaintiffs.
The above decision constitutes the order of the court.