OPINION OF THE COURT
WlLMER J. PATLOW, J.
This is a CPLR article 78 proceeding commenced by petitioner Robert W. Wood against respondents County of Monroe and Raymond D. Cordello as Controller of the County of Monroe for an order compelling them to make payment upon certain claim vouchers submitted by petitioner to the County of Monroe for services performed by him as guardian ad litem in the Monroe County Family Court.
*903 On September 20, 1979 petitioner was appointed by a Judge of the Family Court of Monroe County to serve as guardian ad litem for an incompetent individual who had been named as a respondent in a child neglect proceeding.
At the time of his appointment petitioner was advised by personnel of the Monroe County Family Court that his time was to be billed to the County of Monroe at the rate of $10 per hour for out-of-court time and $15 per hour for in-court time. Petitioner was then given county voucher forms for the purpose of effecting this claim.
Upon completion of his service in April, 1980, petitioner submitted a claim voucher to the County of Monroe in accordance with the instructions given him. The voucher was subsequently approved by the Family Court Judge.
By letter dated June 17,1980 an employee of the Monroe County Controller’s office noted an arithmetical error and stated that the corrected total of $210.71 would be included in the county’s next payment.
Despite all of the foregoing, respondents failed to make payment. In fact, petitioner has not yet been paid.
Likewise, petitioner was appointed by a Monroe County Family Court Judge on September 20, 1979 to act as guardian ad litem to an infant respondent in a child neglect proceeding; and on August 4, 1980 as guardian ad litem to an infant who was the subject of a foster care status review proceeding.
In each instance petitioner was again instructed by agents or employees of the Monroe County Family Court to complete the county claim vouchers which were supplied to him. Petitioner completed the vouchers and submitted them to Monroe County for payment. These claims were for services rendered totaling $275.83 and $43.33, respectively.
Petitioner’s vouchers were thereafter approved for accuracy by the respective Monroe County Family Court Judges.
Nevertheless, respondents failed in each instance to make payment.
It is important to note that petitioner Wood does not seek counsel fees. In each of the above three cases the indi vid *904 uals he served as guardian ad litem were additionally represented either by the Public Defender or by a Family Court Law Guardian.
It should be further noted that the Monroe County Department of Social Services was a party to each of the three Family Court proceedings.
Respondents admit that prior to April 1, 1980 vouchers submitted by court-appointed guardians ad litem in the Monroe County Family Court were paid from county moneys to the extent appropriated by the Monroe County Legislature for that purpose. Thus, the county paid out $4,265 in 1978, $13,879 in 1979 and $6,615 in the first three months of 1980 from an account entitled “Family Court-Professional Services”.
Indeed, it was conceded at oral argument that petitioner Wood was paid by Monroe County for services which were rendered as guardian ad litem prior to September, 1979.
Respondents also concede that unilaterally, and without notice to the Family Court Judges or anyone else, they ceased making payments upon vouchers submitted after April 1, 1980 by duly appointed guardians ad litem.
Thus, as of November, 1980, when this proceeding was commenced, the County of Monroe had accumulated $13,879 in unpaid vouchers submitted by 40 individuals. Since then, the county has continued to accept claim vouchers, although no further payments have been made.
There now remains only $2,501 in the county’s “Family Court-Professional Services” account, a sum insufficient to honor the outstanding vouchers.
On April 1, 1977, the Judges, clerk and counsel of the Monroe County Family Court as well as other key court personnel became employees of New York State pursuant to section 39 of the Judiciary Law.
Also as of April 1, 1977, and pursuant to that same section, the State assumed first-instance responsibility for the operating costs of the Monroe County Family Court as part of the Unified Court System. The transfer occurred over a three-year period and was completed with the State assuming full responsibility as of April 1, 1980.
*905 In view of these facts and in order to fairly adjudicate this matter, the court on its own motion, by order dated March 14,1981, directed that the New York State Office of Court Administration, the Monroe County Family Court, through its Administrative Judge, the Honorable Donald J. Corbett, Jr., and the State of New York be joined as necessary parties to this proceeding.
Petitioner raises two arguments in support of his petition. First, he argues that section 39 (subd 3, par [a]) of the Judiciary Law requires the county to continue paying those expenses of the Monroe County Family Court which were not assumed by the State. Second, petitioner argues that the county’s conduct in making payment to guardians ad litem in a consistent and regular manner prior to April 1, 1980 estops respondents Cordello and the County of Monroe from now denying the lawfulness of the guardian ad litem fees.
Respondents Cordello and the County of Monroe assert in opposition that there is no statutory or contractual basis for the payment of the guardian ad litem fees by the county. They contend that payment would therefore be erroneous and illegal.
In response to petitioner’s estoppel argument, these respondents argue that the county should not be bound by its past erroneous practice. They further argue that the representations to petitioner were made only by State, not county officials, and therefore cannot be used against the county. These respondents contend that since fiscal responsibility passed to the State, petitioner should look to the State for payment of the guardian ad litem fees.
Additionally, respondents Cordello and the County of Monroe argue against estoppel on policy grounds. They assert that it would be inequitable to force the County of Monroe to expend thousands of dollars of public funds for an illegal and improper purpose. Respondents conclude that if the court were to order the county to honor the vouchers, it would be usurping the legislative prerogative, since such court order would require the 1981 Monroe County Legislature to appropriate funds to cover these past illegal and improper costs.
*906 Turning now to the merits — estoppel considerations aside — the court will consider both its inherent power and any statutory authority it may have to award compensation to a guardian ad litem.
Courts in equity did have some inherent power to award a guardian ad litem a reasonable compensation for his services, but only so long as the award was made from the property of the ward (see Weed v Paine, 31 Hun 10; Matter of Robinson, 40 App Div 30, affd 160 NY 448, 692).
Beyond that, the authority to grant an award for services rendered by a guardian ad litem has always been a “creature of statute” (Livingston v Ward, 248 NY 193, 194).
The court can find no statutory authority in the Family Court Act for compensation of guardians ad litem (cf. Family Ct Act, §§243, 245, which provide for compensation of Law Guardians).
However, subdivision (a) of section 165 of the Family Court Act does provide that where the Family Court Act is silent as to procedure, the CPLR shall apply to the extent appropriate (see Matter of John J. S. v Theresa L., 99 Misc 2d 578; Reed v Peterson, 87 Misc 2d 710).
Turning to the CPLR we find that section 1204 provides that a court may allow a guardian ad litem a reasonable compensation to be paid by any other party or from the property or recovery had on behalf of the person for whom the guardian acts.
Petitioner and counsel for respondent Monroe County Family Court urge this court to consider respondent County of Monroe a “party” to the Family Court proceedings herein for purposes of CPLR 1204.
However, in the absence of any indication that respondent County of Monroe, as distinguished from the Monroe County Department of Social Services, was a party to the original Family Court proceedings, this court concludes that CPLR 1204 is inapplicable to the case at bar.
Petitioner Wood maintains that once the county undertook the responsibility of compensating guardians ad litem in the Family Court, the county was obligated to continue such funding by virtue of section 39 (subd 3, par [a]) of the Judiciary Law.
*907 Section 39 of the Judiciary Law provides in pertinent part:
“1. Notwithstanding any other provision of law, and except as provided in subdivision three of this section the state shall pay in the first instance from regular appropriations, beginning April first, nineteen hundred seventy-seven the expenses for the *** family courts * * *
“3. (a) Notwithstanding any other provision of law, all goods, services and facilities presently furnished and paid for by any political subdivision to the courts and court-related agencies affected by this section not included in that portion of the budget of the political subdivision used in the computation of the amounts set forth in subdivision two of this section, shall continue to be furnished and paid for by the political subdivision.”
In enacting the above section (Judiciary Law, § 220, as added by L 1976, ch 966, renum § 39 by L 1978, ch 156) the New York State Legislature made the following findings:
“It is hereby found that the responsibility for allocating the cost of operating the courts of the unified court system pursuant to section twenty-nine of article six of the state constitution may best be exercised by means of a unified state budget * * *
“It is both uneconomical and inefficient to have the responsibility of funding this state-operated court system divided among various units of local government. This divided funding blurs responsibility and accountability for an effective court system and makes the operation of each of the state courts dependent upon varying fiscal capabilities of individual local government * * *
“The state is already significantly involved in the funding of local courts through first instance chargebacks and local assistance programs; this act will make paramount the state’s fiscal control” (L 1976, ch 966, §1).
One court has narrowly construed subdivision 3 of section 39 of the Judiciary Law as “mandating] localities to retain responsibility for court costs associated with light, heat, power, leases, storage, expansion and maintenance of facilities” (Whalen v City of New York, 103 Misc 2d 449, 452).
*908 This court is of the opinion, after considering subdivisions 1 and 3 of section 39 of the Judiciary Law in light of the above-cited legislative findings, that the intent and purpose of the unified court budget is to place the primary responsibility for the cost of operating the Monroe County Family Court squarely upon the State. The statutory scheme contemplates a lesser responsibility on the part of Monroe County, limited for the most part to those expenses associated with the operation and maintenance of the physical courthouse (see Whalen v City of New York, supra).
Thus, the court concludes that the services rendered by a court-appointed guardian ad litem are not included within the meaning of the “goods, services and facilities” set forth in section 39 (subd 3, par [a]) of the Judiciary Law. Therefore, the cost of such services no longer remains the responsibility of the county.
Respondent Office of Court Administration takes the position that a mere determination that the county is not responsible under section 39 of the Judiciary Law for the expense of court-appointed guardians ad litem does not obligate the State to assume such responsibility. Respondent contends that in order to create such liability on the part of the State, there must be specific statutory authorization for the expenditures.
This court finds that neither section 39 of the Judiciary Law nor any other statute compels the State to compensate court-appointed guardians ad litem. Nevertheless the court concludes that there is ample authority in subdivision 1 of section 39 of the Judiciary Law for funding of this necessary court expense, should the State choose to exercise it.
Having found no inherent power or statutory authority upon which to base an award of fees to petitioner, the court now will address the issue of equitable estoppel against respondents Cordello and the County of Monroe.
It is established “that where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision *909 should be estopped from asserting a right or defense which it otherwise could have raised * * * The equitable bar to a defense may arise by virtue of positive acts, or omissions where there was a duty to act” (Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668).
It is further stated that estoppel against a governmental unit “is to be applied only in truly exceptional cases, involving, as it often does, an intrusion, pro tanto, by the judiciary, into the prerogatives of other branches of the government *** The courts must weigh the degree of manifest injustice against the effect, in the particular case, of intervention into the public processes” (Eden v Board of Trustees of State Univ. of N.Y., 49 AD2d 277, 284, mot for stay den 38 NY2d 938; see, also, Brennan v New York City Housing Auth., 72 AD2d 410, 412-414).
The court is aware that the doctrine of equitable estoppel is rarely invoked against a governmental unit, but nevertheless concludes that this is a proper case for its application.
Although the Monroe County Family Court Judges and other court personnel who made the representations to petitioner were technically employees of the State of New York as of April 1, 1977, they had the apparent authority to act on behalf of the county. This appearance of authority was created by the entire operation, past and present, of the Monroe County Family Court.
The respondent County of Monroe was aware of the fact that Monroe County Family Court personnel were making representations on behalf of the county even, after they became employees of the State on April 1, 1977. Respondent’s knowledge stemmed from the fact that it continued to receive Monroe County claim vouchers from court-appointed guardians ad litem after that date.
Because of this knowledge, respondent County of Monroe had a duty, at the very least, to inform the Monroe County Family Court that it would no longer honor the vouchers. Instead, the county not only did not speak when it had the duty to do so, it affirmatively acted in accordance with the representations made on its behalf by paying voucher claims in 1977, 1978, 1979 and the beginning of 1980.
*910 Petitioner Wood therefore had every reason to rely upon the representations made to him by Monroe County Family Court personnel and did so to his detriment.
Additionally, a significant equitable factor in support of the court’s finding of estoppel is the failure of respondent County of Monroe to properly notify the Judges of the Family Court of the county’s change of policy with regard to compensation for court-appointed guardians ad litem. This failure could not help but adversely affect the orderly administration of that court.
Therefore, the petition of Robert W. Wood requesting that respondents Cordello and the County of Monroe be directed to audit the petitioner’s claim vouchers and make payment thereon in the amount of $529.87, is hereby granted.